IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 15, 2015 Session

## IN RE JACKSON H.

**Appeal from the Circuit Court for Williamson County**
**No. 2014205     Robbie T. Beal, Judge**

_____

**No. M2014-01810-COA-R3-JV – Filed October 28, 2016**
_____

This appeal involves a challenge to fees awarded to a guardian ad litem. The juvenile court ordered the child's parents to each pay half of the fees awarded. After the juvenile court made its fee award, Mother appealed to the circuit court. The circuit court conducted a de novo hearing and found the fees awarded reasonable. On appeal to this Court, Mother raises several issues with respect to the award, including a lack of notice that fees would be assessed to the parents, improper limits on discovery, unauthorized and unnecessary actions by the guardian ad litem, and violations of Supreme Court Rules. The guardian ad litem argues Mother's appeal to the circuit court was untimely and requests that we vacate the decision of the circuit court and remand with instructions to dismiss the appeal. We do not find the appeal to the circuit court to be untimely, but we do find the award of fees to the guardian ad litem appropriate. Therefore, we affirm the judgment of the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Elizabeth H.

David R. Grimmett, Nashville, Tennessee, for the appellee, Dawn Michelle Lipford.

## OPINION

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. PROCEEDINGS BEFORE THE JUVENILE COURT

Jackson H.'s involvement with the juvenile justice system began in May of 2013, when he was thirteen. His mother, Elizabeth H. ("Mother") filed a petition in the Juvenile Court for Williamson County, Tennessee, alleging that Jackson was an unruly child.[1] The juvenile court placed Jackson on in-home detention, but many other petitions[2] followed. Ultimately, Jackson made several appearances in juvenile court.

The juvenile court appointed Michelle Lipford (the "GAL" or "Ms. Lipford") as guardian ad litem on June 3, 2013. As required by Tennessee Code Annotated § 37-1-126,[3] the court also assessed a nonrefundable administrative fee of $50. But the court made no determination regarding whether Jackson's parents possessed the financial resources to contribute to the cost of a guardian ad litem.

On July 15, 2013, a magistrate held a review hearing in which Jackson, his counsel,

---

[1] State statute defines an "unruly child" as a child who:

  (A) Habitually and without justification is truant from school while subject to compulsory school attendance under § 49-6-3007;
  (B) Habitually is disobedient of the reasonable and lawful commands of the child's parent(s), guardian or other legal custodian to the degree that such child's health and safety are endangered;
  (C) Commits an offense that is applicable only to a child; or
  (D) Is away from the home, residence or any other residential placement of the child's parent(s), guardian or other legal custodian without their consent. Such child shall be known and defined as a "runaway".

Tenn. Code Ann. § 37-1-102(b)(23) (Supp. 2016).

[2] In addition to unruly behavior, subsequent petitions alleged violations of in-home detention, county probation, and curfew; being away from home without a parent's consent; assault; criminal impersonation; driving without a license; unauthorized use of a vehicle; possession of drug paraphernalia, a legend drug without prescription, and a controlled substance; introduction of contraband into a penal facility; failure to report an accident and to stay within a traffic lane; theft under $500; and vandalism under $500. By our count, twenty-six petitions related to Jackson's behavior or actions were filed between May 6 and December 16, 2013.

[3] Tennessee Code Annotated § 37-1-126 provides, in part, that "[t]he parents, legal custodians or guardians of a child who is appointed a guardian ad litem shall be assessed by the court an administrative fee . . . ." Tenn. Code Ann. § 37-1-126(c)(1) (2014).

2

his parents, the GAL, and a representative of the Department of Children's Services participated. Although new petitions alleging criminal impersonation and violation of county probation had been filed only three days prior, the magistrate relieved Ms. Lipford of her responsibilities as guardian ad litem.

On December 6, 2013, Jackson's counsel filed a motion to withdraw. The motion alleged that counsel had "received a handwritten note at his office (presumably delivered by the child's mother) purporting to be the communication of Jackson [] stating [his] wish to terminate the attorney-client relationship." The motion further alleged that counsel "suspect[ed] that the communication in question may not have been the knowing and voluntary act of [Jackson]."

Three days later, on December 9, 2013, the juvenile court entered an order reappointing Ms. Lipford as guardian ad litem. In addition to noting the numerous petitions filed against Jackson, the court found that Jackson "may be a dependent, neglect[ed] or abused child" and directed the GAL to investigate the dependency, neglect or abuse issues. The court further ordered the GAL to "file a dependency petition if the investigation warrants." Like the previous order, the order reappointing Ms. Lipford assessed an administrative fee to Jackson's parents but was silent as to whether his parents were indigent.

On December 17, 2013, Ms. Lipford filed a petition to adjudicate Jackson dependent and neglected. In the petition, the GAL alleged that "almost all" of the charges against Jackson "accrued while the child was in Mother's care" and that it was "practically impossible for Mother to supervise" Jackson. Mother and Jackson's father ("Father") divorced in 2010, and the GAL claimed Jackson's behavior was "better when he [wa]s in Father's care." The GAL requested that Jackson "remain in the legal custody of his Mother and Father and the physical custody of his Father, and reside in Father's home under his close supervision, pending [Jackson's] acceptance into residential placement and pending the final disposition of [the dependency and neglect petition]."

Mother initially requested a continuance of the preliminary hearing on the petition to obtain counsel, but at a hearing held on January 8, 2014, both Mother and Father waived their right to counsel and signed written waivers to that effect.[4] Following the hearing, the juvenile court entered an order[5] continuing the preliminary hearing but also restricting Mother's communications. Specifically with respect to Mother, the order provided as follows:

---

[4] Apparently, the waiver of counsel was limited only to the January 8, 2014 hearing as both parents subsequently retained counsel.

[5] Only a portion of the order is included in the record.

3

4. With the exception of communications with her attorney(s), Mother shall not convey in any form the statements, opinions, or legal positions of the Guardian *ad litem* to any person or entity without the Guardian *ad litem's* prior permission. Mother shall direct any persons seeking or requiring the statements, opinions, or legal positions of the Guardian *ad litem* to the Guardian *ad litem*. The intent of this order is to avoid miscommunication and/or misrepresentation, whether intentional or otherwise, and is not intended to infringe on mother's communication with her attorney.

5. Mother shall not seek publicity or media attention which may compromise the child's right to privacy and confidentiality in these proceedings. The intent of this Order is to maintain the child's confidentiality and to protect the child from unwanted attention or embarrassment.

On January 13, 2014, the GAL filed an amended petition to adjudicate Jackson dependent and neglected. In her amended petition, the GAL again alleged that Jackson's behavior was "better when he [wa]s in Father's care than when he [wa]s in the care of his Mother." But the GAL also alleged that "Mother's actions and/or inactions with regard to the child's care and supervision pose a threat to the child's safety and well-being to the extent that allowing him to remain in Mother's custody places him at substantial risk of harm."

On January 31, 2014, the juvenile court held a hearing on the amended petition. As reflected in the court's subsequently entered order, Mother and Father and their respective counsel attended the hearing. Among other matters, the order addressed the issue of the fees of the GAL. The order provided as follows: "Neither parent is indigent. Consequently, the Guardian *ad litem* fees should not be submitted to the Administrative Office of the Courts for payment by the state, but instead should be paid by [Father] and [Mother], with each bearing responsibility for fifty percent of the fees." The court directed the GAL to "submit an Affidavit of Fees either at the conclusion of the Adjudicatory Hearing or upon the final disposition of the case."

Thereafter, on February 20, 2014, the GAL filed a petition for criminal contempt against Mother. The GAL alleged that Mother had willfully violated prior juvenile court orders "by sending an email with medical records attached to a number of people and/or entities, not all of whom have legitimate professional interest in the child's medical or psychological care or treatment, and not all of whom are known to the [GAL]." The GAL also alleged that the email "attributed a number of statements, positions, actions and/or inactions to the [GAL], many or most of which were inaccurate or fabricated."

At a hearing held on March 4, 2014, the GAL announced her intention to voluntarily dismiss the amended petition to adjudicate Jackson dependent and neglected. The reasons for the voluntary dismissal are not known, although the order memorializing the dismissal

reflects that a plea agreement involving Jackson placed him in the care of his Father. The order memorializing the dismissal also directed the GAL to "submit a record reflecting the time expended on this case for which she is seeking compensation, along with an Affidavit of Fees." The order also relieved Ms. Lipford of her responsibilities in the case.

On March 10, 2014, the GAL filed an affidavit of her fees, which reflected her hourly rate and the total number of hours for which she was seeking compensation. The GAL attached to the affidavit a detailed statement showing the dates services were rendered, the time devoted in rendering the service on the date in question, and a description of the services rendered.

The juvenile court entered an order awarding the GAL fees of $5,454 for the period from December 5, 2013, to March 7, 2014. The court found, having reviewed the GAL's affidavit, that the fees were reasonable. In accordance with its previous order finding the parents not indigent, the court ordered each parent to pay one-half of the award.

## B. PROCEEDINGS BEFORE THE CIRCUIT COURT

Mother appealed the award of fees to the Circuit Court of Williamson County, Tennessee.[6] Mother also served a subpoena *duces tecum* on the GAL. The subpoena commanded the production of "[a]ll emails, records, letters, correspondence, text messages, interview notes, Administrative Office of the Courts payment submission forms, orders of appointment, and any other documents and correspondence created by you, relied upon by you, received by you, and sent by you as Guardian ad Litem for Jackson [H.]."

For her part, the GAL moved to quash the subpoena. She also resubmitted the same affidavit of her fees that she filed with the juvenile court. The circuit court granted the motion to quash.

The court later conducted a hearing on the GAL's fees. Despite suggestions from the court that Mother should examine the GAL regarding her fee affidavit, Mother was the only witness to testify. Mother's testimony largely focused on her position that Jackson's behavioral issues were the result of a medical condition and her efforts to get Jackson the treatment she felt he needed. She claimed both the juvenile court and the GAL frustrated her efforts. In her view, the GAL's actions "[a]lmost destroyed" Mother and her son.

On August 28, 2014, the circuit court entered an order concluding that Ms. Lipford's

---

[6] By statute, "[a]ny appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding . . . may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a) (Supp. 2016).

fees were reasonable. The court awarded the full amount of fees requested, $5,454, and also ordered Mother and Father to each pay one-half of the amount awarded.

## II. ANALYSIS

Mother identifies seven issues on appeal. As we perceive them, Mother's issues are actually fourfold: (1) whether the trial court appropriately ordered the parents to pay the fees of the GAL; (2) whether the trial court erred in quashing Mother's subpoena *duces tecum* and limiting discovery; (3) whether the fees of the GAL were unreasonable, either because they were unnecessary or outside of the GAL's authority; and (4) whether the amount that may be awarded is limited by Tennessee Supreme Court Rule 13. The GAL argues that the circuit court lacked subject matter jurisdiction to consider Mother's appeal of the award of fees, and we should vacate the circuit court's order and remand with instructions to dismiss Mother's appeal. If the circuit court did have subject matter jurisdiction, the GAL argues that Mother's appeal to this Court is frivolous, entitling the GAL to an award of attorneys' fees on appeal. We consider the circuit court's subject matter jurisdiction first.

### A. SUBJECT MATTER JURISDICTION OF THE CIRCUIT COURT

Any appeal from a final order or judgment of the juvenile court in a dependency and neglect proceeding must "be perfected within ten (10) days, excluding nonjudicial days, following the entry of the juvenile court's order." Tenn. Code Ann. § 37-1-159(a) (Supp. 2016). The GAL argues that the ten-day period began to run from March 14, 2014, the day the juvenile court's order awarding fees was entered. If that is the case, Mother's notice of appeal, which was filed on April 21, 2014, was untimely.

Based our review of the record, we find Mother's appeal to the circuit court was timely. Although the juvenile court did award fees to GAL on March 14, 2014, the order awarding fees did not resolve all outstanding claims of the GAL for fees. On the same day that she filed her fee affidavit, the GAL also filed a motion to quash subpoena *duces tecum* in which she requested "costs and/or fees associated with [the motion to quash]." The juvenile court resolved the request for additional fees in its order granting the motion to quash, which was not entered until April 11, 2014. Mother timely appealed from the order entered on April 11, 2014, and the circuit court possessed subject matter jurisdiction to consider the award of fees to the GAL. Therefore, we may consider the issues raised by Mother with respect to the circuit court's award of fees.

### B. AWARD OF GUARDIAN AD LITEM FEES

As an initial matter, we should note that indigence is not the only basis for appointing a child a guardian ad litem. *See* Tenn. Code Ann. §§ 37-1-126(c)(1), 37-1-150(g)(1) (2014). A court may also appoint a guardian ad litem upon its own motion if a parent's interest

6

conflicts with the child's. *Id.* § 37-1-150(a)(1). Our statutes recognize that there are instances in which a parent may be financially able to defray a portion or all of the cost of a guardian ad litem.

1. Trial Court's Authority to Order Payment by the Parents

Under Tennessee Code Annotated § 37-1-150(d)(1), "[i]f, after due notice to the parents . . . and after affording them an opportunity to be heard, the court finds that they are financially able to pay all or part of the [reasonable compensation for a guardian ad litem], the court may order them to pay the same and prescribe the manner of payment." Tenn. Code Ann. § 37-1-150(d)(1). Even if a child is indigent and a guardian ad litem is appointed, the court may order a child's parents to pay a portion or all of the cost associated with the guardian ad litem if the parents have the financial ability to do so. *Id.* § 37-1-150(g)(1). Mother argues that she was not given notice in a timely fashion that she might be responsible for the GAL's fees. In its consideration of the issue, the circuit court found that Mother was not notified prior to January 31, 2014, that she might be responsible for the fees of the GAL and that the juvenile court "erred in not notifying the parents sooner." However, the circuit court declined to find the notice insufficient.

While we agree that notice was not handled in an ideal manner, under the unique circumstances of this case, we conclude that the notice given to Mother was sufficient under the statute. Both parents were represented by counsel at the hearing on January 31, 2014, and the record does indicate that Mother objected to the juvenile court's indigence finding at the hearing. We also note that at no time has Mother contended that she was indigent or lacked the means to pay all or part of the reasonable compensation of the GAL. In her motion to set aside the order for fees to be paid to Ms. Lipford, Mother made no mention of her ability to pay the fees. Instead, Mother argued that there was "no provision in law for paying a Guardian ad Litem who non-suits the actions they have initiated."

2. Trial Court's Limitation on Discovery

In the proceedings in the circuit court, Mother served a subpoena *duces tecum* on the GAL demanding that the GAL appear at the office of Mother's attorney on June 8, 2014, with the following records: "All emails, records, letters, correspondence, text messages, interview notes, Administrative Office of the Courts payment submission forms, orders of appointment, and any other documents and correspondence created by you, relied upon by you, received by you, and sent by you as Guardian ad Litem for Jackson [H.]." In granting the GAL's motion to quash, the trial court limited the discovery that Mother could obtain on the issue of fees:

> [T]he motion to quash is granted; and the Guardian ad Litem is obligated to provide a detailed time list of the time expended on the above styled matter to

7

Mother's counsel. The Mother's attorney is further allowed to cross-examine the Guardian ad Litem as to the time expended by the Guardian ad Litem, but this Court will not require the Guardian ad Litem to turn over work-product which was created in preparation for the case.

On appeal, Mother essentially argues that the circuit court erred because none of the documents sought were privileged. Mother argues that: (1) there is no attorney/client privilege under Tennessee Code Annotated § 23-3-105 between a guardian ad litem and a child; (2) the communications sought were between the GAL and persons related to Jackson's medical care and potential placement; (3) the GAL non-suited the petition to adjudicate dependency and neglect, and therefore, there was no reason to deny parents access to the information; (4) there is no case law supporting a work-product privilege for a GAL; and (5) a GAL's role is to provide evidence on the best interest of a child.

We review pretrial discovery decisions under an abuse of discretion standard. *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015). A court abuses its discretion when it applies an incorrect legal standard, reaches an unreasonable result, or bases its decision on a clearly erroneous assessment of the evidence. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing the trial court's exercise of discretion, we presume that the decision is correct and review the evidence in a light most favorable to upholding the decision. *Lovlace v. Copley*, 418 S.W.3d 1, 16-17 (Tenn. 2013).

We find no abuse of discretion by the circuit court in granting the GAL's motion to quash or limiting discovery. Certainly, Mother's arguments misapprehend the relationship between the GAL and Jackson. Supreme Court Rule 40 states that "[t]he child is the client of the guardian ad litem" and that the guardian ad litem is "to function as lawyer." Tenn. R. Sup. Ct. 40(c)(1), (f). Beyond that, the document request by Mother was overly broad given that the great majority of services for which the GAL sought compensation related to court appearances and conferences or meetings with interested parties and attorneys. The only documents that the GAL created for which she sought compensation were proposed orders of the court, which were readily available to Mother.

3. Trial Court's Reasonableness Determination

The circuit court awarded the GAL the full amount of the fees she requested, $5,454, which is the same amount the GAL requested from the juvenile court. Mother argued to the circuit court that the fees were unreasonable. In rejecting Mother's argument, the circuit court found that Mother's proof was insufficient to rebut the GAL's assertion of reasonableness:

> The third issue presented is whether the line item entries in the Affidavit of Fees filed by the Guardian ad litem are reasonable. The Court has

carefully reviewed each of the line item entries. With respect to the December 19, 2013 line item, the Court has some concern over the discussion time spent with attorneys but also finds that this time was combined with preparation time for the preliminary hearing and that in combination, the time expended was more than reasonable. The Court finds that the meeting time with the Court Appointed Special Advocate is reasonable. The February 25, 2014 conference time of 1.2 hours gives the Court some concern, but in context with the combined amount of preparation time, the Court finds the time expended to be acceptable. The Court finds the remaining line item fees to be reasonable as well.

On appeal to this Court, Mother again argues the fees are unreasonable. The fees awarded include time associated with the petition for dependency and neglect and the motion to hold Mother in criminal contempt, and Mother submits that the GAL was not authorized to make either filing. We disagree.

The GAL had authority to file the petition for dependency and neglect and the contempt motion by virtue of both the Rules of the Supreme Court and the orders of the juvenile court. By rule, the responsibilities and duties of a guardian ad litem include "[a]dvocating the position that serves the best interest of the child" by "[p]etitioning the court for relief on behalf of the child and filing and responding to appropriate motions and pleadings." Tenn. R. Sup. Ct. 40(d)(7). We conclude that the petition for dependency and neglect and the motion to hold Mother in criminal contempt are just such motions and pleadings. In addition, the juvenile court specifically authorized the GAL's action. In reappointing Ms. Lipford, the juvenile court ordered her to investigate issues of dependency, neglect or abuse and further ordered her to "file a dependency petition if the investigation warrants." When it became concerned that Mother was communicating Jackson's individually identifiable health information to third-parties, the juvenile court authorized the GAL to "initiate contempt of court proceeding against anyone" believed to be in violation of court orders.

Mother also submits that the fees were unreasonable because the GAL's actions were either counter-productive or unproductive. Mother claims that the GAL's actions interfered with Jackson's medical care because the GAL "direct[ed] medical providers to communicate with her instead of mother and by creating such chaos that even the medical providers . . . did not know who [they] could talk to and who [they] couldn't." We find no proof of Mother's claim in the record beyond the fact that the GAL did communicate with Jackson's medical providers. But such communications are necessary for a guardian ad litem to carry out her responsibility and duty to conduct an independent investigation of the facts. *See id.* 40(d)(1)(iv), (viii).

9

Finally, Mother claims that the petition for dependency and neglect and the motion to hold Mother in contempt were unproductive because they were both ultimately dismissed by the GAL. The circuit court considered this argument and rejected it:

> Mother's proof on this issue consisted of the fact that the petition was eventually non-suited and the volume of medical proof that the mother had obtained. The record in this case convinces the Court that there were psychological issues with medical and behavioral components and that the child has a very uncommon diagnosis of PANDAS[7] disorder. The Court in [sic] not comfortable holding the Guardian ad litem to the standard of being able to recognize all that occurs with this disorder and makes no finding with regard to whether the Guardian ad litem was right or wrong in filing a petition to adjudicate dependency and neglect against the mother or why the Guardian ad litem subsequently non-suited the petition. Only if the Guardian ad litem was acting wrongfully should she be denied fees and that was not the case here. The Guardian ad litem was acting on her judgment as to the child's best interests and it cannot be said that she was unreasonable in her actions.

We also reject the argument. For her fees to be reasonable, the GAL did not have to be successful in her filings, although results are among the factors that may be considered. *See, e.g.*, *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 185 (Tenn. 2011) (applying the factors found in Rule of Professional Conduct 1.5(a)(1)-(10) in determining a reasonable attorney's fee regardless of the client's age).

4. Application of Supreme Court Rule 13

The compensation that may be received by counsel appointed for indigent defendants is limited. *See* Tenn. R. Sup. Ct. 13. These limitations also apply to guardians ad litem appointed in certain types of cases. *Id.* Upon her initial appointment, the GAL sought fees under Supreme Court Rule 13, which includes the compensation limitations, and was paid by the Administrative Office of the Courts ("AOC"). Mother claims that it was a "deceptive practice" for the GAL, upon her reappointment, to have sought an award of fees from Mother and Father. Mother also claims that the GAL should be subject to the compensation limits found in Rule 13, even though the parents were found not to be indigent by the juvenile court.

We conclude that Supreme Court Rule 13 does not limit the fees that may be awarded to the GAL in this case. First, a parent's financial status may change over the course of a case or new evidence may come to light indicating that an initial finding of indigence was

---

[7] PANDAS is an acronym for "pediatric autoimmune neuropsychiatric disorders associated with streptococcal infections."

incorrect. In such instances, after notice and a hearing, a court is authorized by statute to order the parent to pay certain costs, including the reasonable compensation. Tenn. Code Ann. § 37-1-150(d)(1). We find nothing deceptive in a guardian ad litem accepting compensation as limited by Supreme Court Rule 13 and later requesting that payment be made by the parents when it appears that they are financially able to do so.

Second, our reading of Tennessee Code Annotated § 37-1-150 indicates that the compensation limits of Supreme Court Rule 13 do not necessarily apply when a parent has been found to be "financially able to defray a portion or all of the cost of the child's representation." *Id.* § 37-1-150(g)(1). When a parent is able to defray a portion or all of the costs of a guardian ad litem, those funds are ultimately paid over to the AOC. If the AOC "receives funds greater than the total amount which appointed counsel or the guardian ad litem has claimed and has been reimbursed pursuant to Tennessee Supreme Court Rule 13, then any such excess funds shall be paid to the appointed attorney." *Id.* § 37-1-150(g)(5). Such a statutory requirement would be unnecessary if fees were limited by Supreme Court Rule 13.

## C. ATTORNEY'S FEE ON APPEAL

Having considered Mother's arguments, we must now address the GAL's request for an award of attorney's fees incurred on appeal under Tennessee Code Annotated § 27-1-122. The GAL contends that Mother's appeal is frivolous. By statute, when an appeal is found to be frivolous, certain damages may be awarded:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2000). The statute "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). We do not find this appeal devoid of merit or any indication that it was undertaken for delay. Therefore, we decline to award the GAL her attorney's fees on appeal.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

11

_____
W. NEAL MCBRAYER, JUDGE